(No. 97-CC-0157-    )

ALBERT WILLIAMS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 19, 2000.*

WILKIE & MCMAHON (JOHN M. WILKIE, of counsel), for Claimant.

JIM RYAN, Attorney General (MARK E. MCCULLOUGH, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

Claimant, Albert Williams, an inmate of the Illinois Department of Corrections, filed his first amended complaint

sounding in negligence on December 8, 1997. Claimant alleged that he was injured in an attack by other inmates at Menard Correctional Center due to the negligence of Respondent.

The Respondent filed a departmental report. The cause was tried before one of the Court's Commissioners.

Claimant testified that he was first incarcerated in April of 1993 on a robbery conviction. Eventually, Claimant was transferred to Menard Correctional Center. On March 23, 1994, Claimant filed a grievance as to his placement at Menard. Claimant alleged in his grievance that he was having problems with gang leaders at Stateville Correctional Center and had been housed in the protective custody unit at Stateville. Claimant further alleged that he had been advised by the Stateville administration that he would be transferred to Dixon. Claimant was transferred to Menard because he was classified as maximum security, due to his second conviction and 24-year sentence. The grievance was denied.

Claimant has an enemy in prison at Stateville named John Holman a/k/a Riffraff. Mr. Holman was a Vice Lord and apparently believed Claimant had ratted on him. John Holman had a brother, Freddie Holman, who was incarcerated at Menard. Claimant did not feel he would be safe around Holman's brother. After Claimant arrived at Menard, he asked to be placed where he would not be in jeopardy. A Captain Stanley explained the protective custody kick-out procedure to Claimant. Protective custody was full so Claimant was placed in a single cell with no cellmate. Claimant had notified officials at Stateville and Menard of his fear of the Holmans and their associates. The effective date of April 12, 1993, is shown on the inmate date summary which indicates Claimant should be kept separate from Holman N73004.

On July 27, 1994, in the early morning, Claimant was in his single cell, which was cell WCH2-20. Claimant was awakened by punches to the face and a cover over his face. Claimant was beaten in the face and struck in the shoulders. He ended up wrestling with a man with a knife. Someone grabbed him from behind and he was put in a full nelson. Then one of the people beat on his face. He was stabbed in the shoulder with a knife. Claimant has a half-inch scar on his shoulder. Claimant's cell had been locked and inmates are not supposed to be let into other inmates' cells. He believes staff let them in. Claimant cannot identify his attackers.

Claimant was a member of the Four Corner Hustlers gang. The Vice Lords were their adversaries. Holman was a Vice Lord. Claimant testified he was never a Vice Lord. Claimant had members of the Vice Lords housed on either side of his cell. During the beating, Claimant lost consciousness. He came to as he was being carried to the infirmary. Claimant had tenderness on the right side of his neck, a swollen eye, and pain in his nose and eyeballs. Claimant had double vision. Claimant was in the infirmary until August 9, 1994, when he was discharged.

Claimant indicated that in addition to the scar on his shoulder, he received four chipped teeth. The dentists at the prison fixed his teeth. One tooth had to be pulled because it was split in half. Claimant occasionally has blurred vision and problems with light. He also has headaches and nightmares concerning the incident. Claimant called no medical experts to testify about his injuries.

Claimant testified he notified several different gallery officers about his safety concerns when he arrived at Menard but nothing was done. Menard was on lockdown when he arrived. Claimant does not recall the names of the gallery officers he spoke to. He does recall talking to

Captain Stanley at Menard about his safety concerns on April 7, 1994.

The Respondent called Dr. Muhammad Choudry to testify. Dr. Choudry testified that, for the six months prior to March 3, 2000, Claimant had made no medical complaints of blurred vision, problems with light, or the need for glasses to the medical personnel at the Department of Corrections.

The medical records indicate that on August 9, 1994, Claimant had a contusion to the right eye and a questionable hemorrhage on the eye. There was a complaint by Claimant of blurred vision at that time. Claimant was on Cyclogyl which could cause blurred vision.

Claimant's follow-up records indicate contusion, inflammation of the iris/pupil, but that the blurred vision had cleared up.

Respondent produced evidence that Fred Holman was in court in Joliet on the date of this incident. He was in Joliet from January 28, 1992, until August 3, 1994. This impeached Claimant's testimony that he saw Fred Holmes at Menard in July of 1994. The Respondent also called Sergeant Lamont Gilbert to testify. He recalled the incident when Claimant was injured. He was supervisor of the cell house where Claimant was incarcerated. He recalls Officer Borton calling over the radio. Officer Borton was upset. He went down to Claimant's cell and saw Claimant in his cell. He had been beaten up. He called the medical staff and Claimant was transferred to the health care unit. Menard is a maximum security facility for violent inmates. There is illegal gang activity. He believes that the Vice Lords and Four Corner Hustlers were allies. Sometimes gangs get along and other times they do not. He also testified that between 8:00 a.m. and 9:00 a.m., the cells on the

gallery are all cranked open. Claimant never informed him of any fears of enemies. Claimant never requested to be deadlocked in his cell.

On cross-examination, Sergeant Gilbert admitted that if an inmate was sleeping when the crank was thrown, he would still have to get up to open the door himself. No one could go into the cell until the inmate opened his cell door.

The incident report in the Departmental Report acknowledges the assault on Claimant, his injuries, and that the assault occurred at 8:45 a.m. on July 27, 1994.

## The Law

Although the State is not an insurer of the safety of an inmate in its custody, the State has a duty to exercise reasonable care under the circumstances to prevent its inmates from suffering harm at the hands of other inmates, but it must be shown by a preponderance of the evidence that the harm was foreseeable. *Phipps v. State* (1991), 44 Ill. Ct. Cl. 105.

In cases where inmates have been assaulted by other inmates, this Court has determined that, in order to prove foreseeability of harm, it must be shown that Respondent's agents anticipated, or should have anticipated, that third parties would commit criminal acts against the inmate who was attacked. (*Childs v. State* (1985), 38 Ill. Ct. Cl. 196.) Claimant filed a grievance concerning fears for his safety at Menard. The State had documents as early as April of 1993 that Claimant had known enemies in the prison system. Claimant testified he gave notice of his fears for his safety to Captain Stanley. The Respondent failed to call Captain Stanley to rebut that testimony.

The State had actual notice of the potential for harm to this Claimant. (*Smith v. State* (1991), 44 Ill. Ct. Cl. 45.)

This case turns, however, on the facts of the attack on Claimant. It is undisputed that the attack occurred in Claimant's single cell. The Claimant testified he was awakened by the beating. The Sergeant testified that even if the crank is turned to unlock the cell block, no unauthorized person can get into the cell until the inmate opens the cell door. This leads the Court to the conclusion that someone with authority opened Claimant's cell so he could be attacked. Claimant's testimony was corroborated by the Sergeant's testimony.

We find that the Respondent had actual notice of potential harm to Claimant and failed to reasonably act to protect him by allowing his cell door to be opened. The Respondent is liable for Claimant's proven injuries. It was foreseeable that, if Claimant's cell door was opened beyond the turning of the crank, that he would be attacked while he slept. *Petrusak v. State* (1987), 39 Ill. Ct. Cl. 113.

The issue of damages is much less clear. Claimant had no proven medical bills or lost wages. He had a small scar on his shoulder, a hospitalization for ten days, contusions, and pain and suffering. Claimant had no documentation for his claim of blurred vision and headaches beyond the hospitalization. Claimant called no expert witnesses as to his medical care. Claimant's testimony as to his pain and suffering was extremely brief. However, Claimant is entitled to a measure of damages for his pain and suffering, small scar, and teeth injuries.

Based on all the testimony and exhibits, we find that Four Thousand Dollars ($4,000) fairly compensates Claimant for his proven injuries. For the foregoing reasons, it is ordered that Claimant is awarded Four Thousand Dollars ($4,000) in full and final satisfaction of his claim.